FILED'10 NOV 22 11:18 USDC·ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**ADAM VILLALOBOS,**                          Civil No. 09-6161-CL

              Plaintiff

        v.                                    **FINDINGS AND**
                                    **RECOMMENDATION**

**MICHAEL J. ASTRUE,**
Commissioner of Social Security

            Defendant.

CLARKE, Magistrate Judge:

    Plaintiff Adam Villalobos ("Villalobos") seeks judicial review of the Social Security

Commissioner's final decision denying his applications for Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. This

court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's decision should

be reversed and remanded for further proceedings.

### **BACKGROUND**

1 - FINDINGS AND RECOMMENDATION

Born in 1953 (Tr. 81),[1] Villalobos reports post-secondary education in appliance repair (Tr. 91), and work as a self-employed appliance repairman between 1976 and April 2003.  Tr. 86. Villalobos alleges disability since January 1, 2003 (Tr. 81), due to Hepatitis C, panic, and anxiety disorders.   Tr. 85.   The Commissioner denied Villalobos's applications initially and upon reconsideration.  Tr. 49-61, 962-68.

An Administrative Law Judge ("ALJ") held a hearing on June 21, 2006.  Tr. 1107-64.  On February 20, 2007, the ALJ issued a 29 page decision finding Villalobos not disabled.  Tr. 17-46.  The Appeals Council accepted additional evidence into the record, but denied review of the matter on April 10, 2009 (Tr. 9-12), and Villalobos presently appeals.

During the period under review, Villalobos twice underwent interferon treatment for hepatitis C, which failed both times.  Tr. 645, 656, 986.  Villalobos was hospitalized for various psychotic and mood disorders on two occasions, in August 2006 and May 2007.  Tr. 912, 971, 1002.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act.  20 C.F.R. §§ 404.1520; 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I); 416.920(a)(4)(I).  At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on November 19, 209 (Docket # 12).

impairment" that meets the twelve-month durational requirement.   20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii); 416.909, 416.920(a)(4)(ii).   If the claimant does not have such a severe impairment, he is not disabled.   *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations.   20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).   If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC").   The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments.   20 C.F.R. §§ 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four.   20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).   If the claimant can perform his past relevant work, he is not disabled.   If the ALJ finds that the claimant's RFC precludes performance of his past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy.   20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); 416.920(a)(4)(v); 416.920(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).   If the claimant cannot perform such work, he is disabled.   *Id.*

The initial burden of establishing disability rests upon the claimant.   *Tackett*, 180 F.3d at 1098.   If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration

3 - FINDINGS AND RECOMMENDATION

the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g); 404.1566; 416.920(g); 416.966.

## THE ALJ'S FINDINGS

The ALJ found that Villalobos had not performed substantial gainful activity at step one. Tr. 19. The ALJ made the following step two findings:

> The claimant has the following severe impairments: bipolar/persistent disorder; polysubstance abuse; right carpal tunnel syndrome; hepatitis C in remission with treatment (severe because underwent treatment but no serious side effects); obesity (5'9" at 253 pounds); mild arthritis in the hips, shoulders, and knees (20 C.F.R. § 404.1520(c) and 416.920(c). The claimant has the following non-severe impairments [sic] diabetes mellitus and hypertension.

Tr. 19. The ALJ found provided no explanation or citation to the record for these findings. The ALJ subsequently found that Villalobos's impairments did not meet or equal an impairment listed in the Commissioner's regulations, again without any findings or citations to the record.

The ALJ made the following RFC assessment:

> [T]he claimant has the residual functional capacity to perform light work which would be lifting up to 20 pounds occasionally and 10 pounds frequently. He is capable of sitting (with normal breaks) for a total of about six hours in an eight hour work day. He cannot perform repetitive forceful gripping or twisting with his dominant arm (the right) and he is limited in his fine motor coordination or receptive feeling. The claimant's nonexertional restrictions are that he is moderately limited in his ability to understand and remember detailed instructions and carry out detailed instructions. The claimant is moderately limited in his ability to interact appropriately with the general public.

Tr. 20. The ALJ provided 23 pages of analysis supporting this RFC assessment.

At step four the ALJ found Villalobos unable to perform his past relevant work (Tr. 43), but

4 - FINDINGS AND RECOMMENDATION

found Villalobos had "acquired work skills from past relevant work." Tr. 44. The ALJ subsequently found Villalobos able to perform work in the national economy at step five in the sequential proceedings (Tr. 44), and therefore not disabled. Tr. 45.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193.

## ANALYSIS

Villalobos challenges the ALJ's assessment of his credibility, the opinion of treating psychiatrist Dr. Strek, and the lay testimony. Villalobos consequently asserts that the ALJ should have found him disabled.

5 - FINDINGS AND RECOMMENDATION

## I.    Credibility

Villalobos's credibility specifically addresses the ALJ's findings regarding his alleged ability to perform substantial gainful activity, his ability to monitor his own medical treatment, and symptoms relating to his nausea and mood disorders. Pl.'s Opening Br. 14-16.

### A.    Standards: Credibility

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284; *see* also SSR 96-7p at *3 (available at 1996 WL 374186). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Smolen*, 80 F.3d at 1284. Once a claimant establishes an impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### B.    CredibilityAnalysis

#### a.    The ALJ's Findings

6 - FINDINGS AND RECOMMENDATION

The ALJ prefaced his 23 page discussion of Villalobos's RFC with a conclusion:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

Tr. 20. The ALJ's exhaustive discussion of the medical record did not make specific credibility findings.

This analysis is fundamentally flawed. The ALJ may cite a claimant's medical record in finding a claimant not credible, but he cannot base his credibility findings solely upon the claimant's medical record. *Robbins*, 466 F.3d at 883. The ALJ's credibility analysis may cite the medical record in conjunction with other findings. *Smolen*, 80 F.3d at 1284.

### b.    Activities of Daily Living

The court construes Villalobos's challenge to the ALJ's findings regarding his alleged ability to perform work activity and monitor his medical treatment (Pl.'s Opening Br. 15-16) as a challenge to the ALJ's analysis of his activities of daily living. The Commissioner fails to address these arguments.

The ALJ may cite a claimant's activities of daily living in assessing a claimant's credibility. *Smolen*, 80 F.3d at 1284. The relevant inquiry is not limited to whether the claimant's activities amount to work activity, the ALJ may also consider whether the claimant's activities contradict his allegation of total disability. *Batson*, 359 F.3d at 1196; *Smolen*, 80 F.3d at 1284.

### i.    Work Activity

The ALJ noted that Villalobos was working in December 2002. Tr. 24. Because Villalobos

7 - FINDINGS AND RECOMMENDATION

did not allege disability until January 2003, this activity is irrelevant. Tr. 24. The ALJ found that Villalobos was "apparently still working in as of March 2003." *Id.* The ALJ then repeated this exact finding one page later in his analysis. Tr. 25. However, the record, which the ALJ cites, shows that Villalobos in fact reported that he could not maintain his work schedule or work as much as he wanted at this time. Tr. 296, 305. The unsuccessful work attempt concept is an equitable device allowing the Commissioner to disregard such attempts. SSR 05-02 at *1. The ALJ's inference that Villalobos's work attempts undermine his allegation of disability contravenes this standard and is therefore not sustained.

### ii.    Exercise

The ALJ repeatedly cited Villalobos's walking and use of an exercise bike. Tr. 23, 28, 36. The ALJ inferred that this activity was inconsistent with an allegation of disability. Tr. 36. However, the ALJ also noted that Dr. Kosek and Dr. Blackburn suggested that Villalobos exercise as part of a weight-loss regime. Tr. 32, 33. Here the ALJ apparently infers that Villalobos declined to follow these recommendations. *Id.*

The ALJ may not chastise a claimant for participating in physician-ordered exercise. *Reddick*, 157 F.3d at 724. As the ALJ noted, the record shows that Villalobos's physicians suggested he exercise. Tr. 305. The ALJ's inference that such exercise discredits Villalobos should not be sustained.

### iii.    Ability to Monitor Treatment

Villalobos challenges the ALJ's finding that his attention to managing his diabetes and hypertension supported a finding that Villalobos could focus upon work-related tasks. Pl.'s

Opening Br. 16.  The ALJ found:

> [T]he claimant's ability to closely monitor or improve [his diabetes and hypertension] . . . suggests that he was able to focus on improvements and follow through with tasks.  The claimant's demonstrated the same ability to focus, [sic] in successfully executing two rounds of daily hepatitis C treatment injections.

Tr. 28.  While the ALJ may discredit a claimant who fails to follow treatment, *Smolen*, 80 F.3d at 1284, this court is unaware of a legal standard suggesting that an ALJ may discredit a claimant for following treatment instructions.  This reasoning, so far as it pertains to Villalobos's credibility, should not be sustained.

In summary, the ALJ erroneously relied upon Villalobos's activities of daily living as noted. The Commissioner fails to explain the manner in which the ALJ's assessment of Villalobos's activities should be sustained.  For these reasons, the ALJ's citation to Villalobos's work attempts, exercise, and treatment management should not be sustained.

### c.    Specific Symptom Testimony

Villalobos also challenges the ALJ's rejection of his symptom testimony relating to his fatigue, nausea and mood disorders.  Tr. 14-15.  The Commissioner asserts that the ALJ properly rejected Villalobos's testimony regarding the extent to which these symptoms prevent him from working.  Def.'s Br. 11-12.

### i.    Fatigue

The ALJ stated that Villalobos's attorney "sought to support the claimant's testimony about fatigue, which was contradicted by the medical record. . . ." Tr. 21.  The ALJ made neither citation nor finding in support of this assertion.  The ALJ continued, "fatigue, like a headache or pain,

9 - FINDINGS AND RECOMMENDATION

subjective and not measurable." *Id.* The ALJ noted that "in such cases the consistency of the claimant's reports, entries in his medical records, his activities, etc., should be considered." *Id.*

The ALJ correctly articulates the standard of evaluating excess fatigue testimony. *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989) (applying excess pain standards to excess fatigue testimony). However, the ALJ's subsequent conclusion, that, "as noted his reports of *disability* fatigue are not corroborated by the medical record as discussed," *id.* (emphasis added), is unsupported by the relevant legal standard, the ALJ's own finding, or Villalobos's medical record.

The ALJ does not explain his notion of "disability fatigue." Tr. 21. The legal standard instructs that excess fatigue should be considered under the same analysis as excess pain. *Swenson*, 876 F.2d at 687. However, a single symptom or impairment need not be disabling by itself. The relevant inquiry is whether the symptom or impairment would be disabled in combination with the claimant's other symptoms or impairments. 20 C.F.R. §§ 404.1523; 416.923. The ALJ therefore misapplied the legal standard.

Further, as noted, though the ALJ stated that Villalobos's fatigue was not disabling, "as noted," the ALJ's immediate previous discussion makes no such finding. If the ALJ intended reference to another point in his 23 page RFC discussion, he should have made his reference clear to this court. The ALJ's conclusion, "As these entries document, the claimant's assertions of debilitating fatigue related to treatment are greatly exaggerated" does not identify the manner in which Villalobos's statements allegedly exaggerate his fatigue, or evidence supporting this conclusion. This analysis is unsupported and should not be affirmed.

Finally, contrary to the ALJ's assertion, the medical record does not contradict Villalobos's

testimony that he experienced fatigue in the course of his interferon treatment and the remaining

period under review. The record shows that Villalobos regularly reported fatigue to medical

personnel administering his interferon treatment between November 22, 2002, and April 30, 2003.

Tr. 296, 298, 301, 305, 307, 316, 320. The ALJ's finding regarding the medical record and

Villalobos's fatigue should also not be affirmed.

### ii.    Nausea

Hepatitis C may cause nausea.[2] The ALJ may cite medical evidence in discussing a

claimant's credibility. *Smolen*, 80 F.3d at 1284. However, once a claimant establishes an

impairment that could reasonably cause the reported symptoms, the ALJ may not require that

medical evidence corroborates the degree of symptom testimony the claimant proffers.

*Lingenfelter*, 504 F.3d at 1036 (citing *Smolen*, 80 F.3d at 1282)).

The ALJ found Villalobos's testimony regarding his nausea "unsubstantiated" by the

medical record. Tr. 21. The ALJ stated that office records of Dr. Kay, the physician who

administered Villalobos's interferon treatment did not support an allegation of nausea. *Id.*

Curiously, the ALJ subsequently discussed Dr. Kay's chart notes describing Villalobos's nausea and

treatment of this symptom. Tr. 26. The ALJ also cited Villalobos's reports of nausea to treating

physicians Dr. Bigley (Tr. 31), and Dr. Kosek. Tr. 32. The ALJ's finding that Villalobos did not

experience nausea is itself contradictory.

Further, the record before this court shows that Villalobos consistently reported nausea to

--------------------------------------------------

[2]For hepatitis C and nausea, *see* National Institute of Health, Hepatitis: Symptoms, Diagnosis, Treatment and Prevention. *Available* at: http://www.nlm.nih.gov/medlineplus/magazine/issues/spring09/articles/spring09pg25.html (last visited November 18, 2010).

11 - FINDINGS AND RECOMMENDATION

Dr. Kay and Dr. Kay's staff[3] between September 12, 2002, and August 1, 2003, and again between January 9, 2005, and August 24, 2006. Tr. 274, 298, 330-31, 573, 606, 645, 656, 728, 879, 719. The ALJ's finding that Villalobos did not report nausea to Dr. Kay is not based upon the record, and ignores a considerable portion of the record.

The ALJ's finding that the medical record does not support Villalobos's nausea testimony is not based upon substantial evidence and contravenes the applicable legal standard. This finding should not be sustained.

### iii.    Mood Disorders

The ALJ found Villalobos's testimony regarding his anxiety and panic disorders not credible as well. Tr. 33. Villalobos asserts that, contrary to this finding, the medical record shows that Villalobos was, at times, overwhelmed by these symptoms. Pl.'s Opening Br. 15.

As stated above, once a claimant shows a medically determinable impairment, the ALJ must provide clear and convincing reasons for rejecting the claimant's symptom testimony. *Lingenfelter*, 504 F.3d at 1036. The ALJ may not rely solely upon the medical record to discredit a claimant's symptom testimony. *Robbins*, 466 F.3d at 883. The ALJ presently found, in some detail, that the medical record did not support Villalobos's reported psychiatric symptoms. Tr. 34-42. The ALJ appears to focus upon whether Villalobos's bipolar disorder alone is "incapacitating." Tr. 34.

This analysis applies the wrong legal standard. As stated above, the issue is whether Villalobos's symptoms, in combination, are disabling. 20 C.F.R. §§ 404.1523; 416.923. Therefore

---

[3]The court notes that the opinion of a nurse practitioner working under the supervision of a physician may be construed as an acceptable medical source. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996).

it is irrelevant whether Villalobos's bipolar disorder, by itself, is incapacitating. The court also notes, again, that the ALJ may not rely solely upon the medical record in discrediting a claimant's symptom testimony. This analysis should not be sustained.

In summary, the ALJ did not properly assess Villalobos's testimony regarding his fatigue, nausea, and mood disorders.

### c.    2006 and 2007 Hospitalizations and Credibility

Finally, the Commissioner now cites Villalobos's 2006 and 2007 hospitalizations in support of the ALJ's finding that Villalobos did not have memory problems following conclusion of his hepatitis C treatment. Def.'s Br. 11. This argument is flawed for two reasons.

First, the ALJ made no finding regarding Villalobos's *post*-interferon treatment memory problems. The ALJ instead found that Villalobos's alleged memory problems *at the time* of his interferon treatment were unrelated to his treatment. Tr. 22. Here the ALJ reasoned that, because the record showed that Villalobos also used other prescribed medications such as oxycodone and xanax, as well as marijuana, his memory problems were not related to interferon treatment. *Id.* The ALJ may not substitute his judgment for that of a medical source. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)(hearing examiner, not qualified as a medical expert, should not go beyond the record to make his own assessment of the claimant's condition). The ALJ's finding that Villalobos's alleged memory problems were unrelated to his interferon treatment is not adequately explained and contains no citation to such a finding by an acceptable medical source in the record before this court. The record therefore does not support the ALJ's finding regarding Villalobos's memory problems during his interferon treatment, nor the Commissioner's assertion that the ALJ had no memory problems after completing his interferon treatment.

Second, Villalobos's April and May 2007 hospitalization records were created after the ALJ's February 20, 2007 decision, and were therefore not before the ALJ. Because it would have been impossible for the ALJ to rely upon treatment notes that did not exist at the date of his decision, the court flatly rejects the Commissioner's submission that the ALJ properly reviewed these records.

### C.    Credibility Conclusion

The ALJ repeatedly and exhaustively cited Villalobos's medical record in finding him not credible, without properly considering other factors pertinent to his credibility analysis. The ALJ also applied improper legal standards pertaining to his analysis of Villalobos's activities of daily living. Finally, the ALJ's findings are internally contradictory and are, at times, unsupported by the medical record. The ALJ's determination that Villalobos is not entirely credible should not be sustained.

Further, it appears to this court that the ALJ assumed the court would agree with his conclusion that Villalobos was not credible, and that further illumination on this point was unnecessary. Regardless of a claimant's offensive habits or personal presentation, the ALJ must always provide sufficiently clear and convincing reasons for finding a claimant not credible. *See Lingenfelter*, 504 F.3d at 1036 (reaffirming that an ALJ must provide clear and convincing reasons for finding a claimant not credible after a claimant has established an impairment and absent malingering). Despite 23 pages of exhaustive discussion of Villalobos's medical record, the ALJ failed to identify specific, clear, and convincing reasons for finding Villalobos not credible. The ALJ's analysis and conclusion should therefore not be sustained.

## II.    Medical Source Statements

Villalobos challenges the ALJ's evaluation of the opinion of treating psychiatrist Dr. Strek, specifically asserting that the ALJ improperly rejected Dr. Strek's August 13, 2003 chart note addressing Villalobos's ability to work.

### A.      Standards: Medical Source Statements

Disability opinions are reserved for the Commissioner.   20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1).  However, when making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.*  If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. *Id.* at 830.  The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).   In addition, the ALJ must ordinarily give greater weight to opinions rendered by specialists. 20 C.F.R. §§ 404.1527(d)(5); 416.927(d)(5).

### B.      Analysis: Dr. Strek's Opinion

The record before this court shows that Dr. Strek treated Villalobos between August 13, 2003 (Tr. 500-01), and May 26, 2006. Tr. 823.  Throughout this period Dr. Strek diagnosed bipolar disorder, depression, and anxiety, and prescribed numerous psychotropic medications.  Tr. 479, 481-95, 499-501, 542, 545, 547-67, 823, 825, 827, 829.

The ALJ devoted three full pages of single-spaced analysis to Dr. Strek's opinion.  Tr. 37-39.  The ALJ summarized Dr. Strek's treatment notes between September 15, 2003 and June 28, 2006. *Id.*  The ALJ emphasized Villalobos's reports of his symptoms to Dr. Strek, such as

depression, irritability, racing thoughts, crying spells, disorganization, marital troubles, unemployment, and his reading habits. *Id.*

The ALJ did not cite Dr. Strek's diagnoses or mental status exam reports corresponding to his treatment notes. The ALJ need not discuss evidence that is "neither significant nor probative," *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). A physician's diagnosis is usually, though not always, the most essential element of his opinion. Therefore, the omission of a longitudinal primary treating physician's diagnostic impressions is significant. This analysis should not be sustained.

### a.    Mental Incapacity

Villalobos now asserts that, contrary to the ALJ's findings, Dr. Strek's treatment notes demonstrate that Villalobos is incapacitated by mental health issues, and that Villalobos could not work due to moodiness. Pl.'s Opening Br. 17, 18. The Commissioner asserts that Dr. Strek's treatment notes show that Villalobos's mood was stable and improved with medication. Def.'s Br. 12. Notably, the Commissioner cites only Dr. Strek's treatment notes pertaining to a period up to, but not after, "early 2005." *Id.* The Commissioner's assertion selectively reads the record. This argument should be rejected.

### b.    Temper

Villalobos also asserts that the record supports a finding that he has a temper. Pl.'s Opening Br. 17. Villalobos does not articulate the manner in which such a finding establishes a work-place limitation relevant disability determinations. Pl.'s Opening Br. 20. This submission is therefore irrelevant to a determination of disability.

### c.    August 13, 2003 Chart Note

The ALJ specifically noted Dr. Strek's August 13, 2003 chart note stating that Villalobos was unable to work, but found this opinion unsupported by Dr. Strek's treatment notes.  Tr. 37 (citing Ex. 13F, p. 23 [sic] (Tr. 501)).  The record shows that Dr. Strek noted Villalobos's complaints of depression and short-term memory problems, and also wrote "unable to work full or part time."  Tr. 501.  The record does not indicate whether this language reflected Dr. Strek's opinion that Villalobos was unable to work, or Villalobos's report that he believed he was unable to work.  Upon remand, the ALJ must determine the meaning of Dr. Strek's August 13, 2003 remark.

### d.    Longitudinal Treatment Record

Finally, Villalobos asserts that his mental health worsened during the period in question, though he does not explain how this assertion pertains to the ALJ's rejection of Dr. Strek's opinion. Pl.'s Opening Br. 18.  The Commissioner does not address this argument.  The record shows that in May 2007 Villalobos was hospitalized for unspecified psychosis and assigned a Global Assessment of Functioning ("GAF")[4] score between ten and twenty.  Tr. 916.  The record therefore supports Villalobos's assertion that his mental health worsened.  Upon remand the ALJ should consider the ramifications of this trend upon Dr. Strek's opinion.

### D.    Conclusion: Dr. Strek

---

[4]The GAF scale is used to report a clinician's judgment of the patient's overall psychological, social and occupational functioning on a scale of 1 to 100.  It does not include impairment in functioning due to physical or environmental limitations.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th Ed., Text Revision, 2002)("*DSM*"), 34.  A GAF score of 10-20 indicates "some danger of hurting self or others . . . OR occasionally fails to maintain minimal personal hygiene . . . OR gross impairment in communication."  *Id.*

In summary, the ALJ provided insufficient reasons for rejecting Dr. Strek's opinion. The effects of this error are discussed below.

## IV.    Lay Testimony

Villalobos also contends that the ALJ improperly assessed lay testimony submitted by his wife, Shelly Villalobos ("Ms. Villalobos"). Pl.'s Opening Br. 19.

### A.    Lay Testimony: Standards

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512.

### B.    Shelly Villalobos's Testimony

Ms. Villalobos submitted witness questionnaires to the Commissioner on September 14, 2003 (Tr. 102-110), and on April 25, 2004. Tr. 145-53.

#### a.    September 14, 2003 Testimony

On September 14, 2003, Ms. Villalobos wrote that during the day Villalobos takes medications, rests most of the day, attends medical appointments, eats, bathes, and picks up medications from the store. Tr. 102. She stated that Villalobos's medications effect his sleep because he naps during the day, and is then unable to sleep at night. Tr. 103. Regarding Villalobos's grooming, Ms. Villalobos stated that he sometimes forgets to changes his clothes or

brush his hair. Tr. 104. Regarding his daily activities, Ms. Villalobos stated that Villalobos can prepare simple food in the microwave, and does this once daily when she is at work. *Id.* Ms. Villalobos also stated that Villalobos performs no household chores except "picking up his dirty clothes for laundry," and that this takes him five to ten minutes once or twice per week. *Id.* Ms. Villalobos also stated that Villalobos needs help and encouragement in finding motivation to do this. *Id.*

Ms. Villalobos also stated that Villalobos goes shops for food every two weeks, and can manage a checkbook, savings, account, bill paying, and can count change. Tr. 105. However, she also stated that Villalobos's "wonders if he forgot to pay a bill, [or] forgot to pay the co-pay" at the doctor's office. Tr. 106. Ms. Villalobos reported that Villalobos's hobbies are watching television and fishing, and that while he watches television "all the time," he can no longer fish. *Id.*

Finally, Ms. Villalobos stated that Villalobos must be reminded to go to medical appointments, and that he has moodiness and a very short temper due to his medication. *Id.* In conclusion, Ms. Villalobos indicated that Villalobos has difficulty lifting, squatting, walking, kneeling, stair-climbing, understanding and completing tasks, concentrating, following instructions, getting along with others, and has also has difficulty with memory. Tr. 107. She stated that he must re-read material in order to understand it, and that he has trouble following spoken instruction because he forgets what he is told. *Id.* He also does not handle stress well, and has an unusual fear of death. Tr. 108.

### b.    April 24, 2004 Testimony

Ms. Villalobos completed a second third party report on April 24, 2004. Tr. 145-52. She stated Villalobos wakes up, checks his blood sugar, takes his medications, eats, and goes to the

doctor as needed.  Tr. 145.  Then he rests, takes his blood pressure and medicines, checks, his blood sugar, "etc."  *Id.*  She again stated that he has difficulty remembering things, and can only complete simple household chores due to pain.  Tr. 146.  Ms. Villalobos stated that Villalobos has difficulty sleeping due to restlessness.  *Id.*  She also stated that Villalobos has difficulty remembering to change his clothes and take his medication.  Tr. 147.

Regarding his daily activities, Ms. Villalobos wrote that Villalobos prepares TV dinners, and that this takes him five or ten minutes.  *Id.*  She wrote that he sometimes loads the dishwasher and puts dirty clothes in a laundry hamper.  *Id.*  He can do these things "about ½ day if at all," and he requires encouragement to do them.  *Id.*  Ms. Villalobos also wrote that Villalobos goes to medical appointment and picks up medications, and shops "maybe once a week" but often forgets what he was looking for.  Tr. 148.  She stated that Villalobos watches television, reads, and walks, but that walking tires him.  Tr. 149.

Ms. Villalobos stated that Villalobos has difficulty getting along with people, and that this is "because of his bi-polar disorder brought on by Hep C, very short tempered."  Tr. 149.  Finally, she endorsed that Villalobos has various postural limitations and he has difficulty completing tasks, and with memory, concentration, understanding, following instructions, and getting along with others.  Tr. 150.

### C.    Analysis

The ALJ cited various limitations Ms. Villalobos described in her testimony, such as Villalobos's fatigue and difficulty completing household chores.  Tr. 22-23.  The ALJ neither accepted nor rejected these limitations.  The ALJ subsequently rejected Ms. Villalobos's testimony regarding Villalobos's temper and fatigue.  The ALJ also rejected Ms. Villalobos's testimony

because she failed to provide a "timeline." Tr. 23.

### a.    Villalobos's Temper

The ALJ rejected Ms. Villalobos's testimony regarding Villalobos's temper. The ALJ wrote that Ms. Villalobos stated that Villalobos "had trouble getting along with others because of his bipolar disorder brought on by hepatitis C." Tr. 23. The ALJ rejected this statement because he found no correlation between Villalobos's hepatitis C and his alleged bipolar disorder. *Id.*

The record shows that Ms. Villalobos responded to a question asking, "Does this person have any problems getting along with family, friends, neighbors, or others? If yes, explain." Tr. 149. Ms. Villalobos wrote, "because of bi-polar brought on by Hep C treatment, very short tempered." *Id.* Lay testimony cannot establish a medical diagnosis. *Lewis*, 236 F.3d at 512. However, the medical record before this court clearly shows that Villalobos carried a bipolar diagnosis made by acceptable medical sources. *See supra*, 15. Thus Ms. Villalobos's comment that she believed Villalobos's hepatitis C treatment caused his bipolar disorder is irrelevant. The relevant portion of Ms. Villalobos's testimony is her observation of Villalobos's temper. The ALJ made no findings or comment upon this observation. His rejection of Ms. Villalobos's testimony regarding Villalobos's testimony is not based upon the appropriate legal standard and therefore should not be affirmed.

### b.    Villalobos's Fatigue

The ALJ also found that Ms. Villalobos "seems to attribute [Villalobos's] sleepiness to the fact that he would not sleep at night, but not because of his hepatitis C medication." Tr. 23. The ALJ again erred by requiring lay witness observations to correlate to a specific aspect of the medical record. The crucial aspect of Ms. Villalobos's testimony is her observation that Villalobos was

21 - FINDINGS AND RECOMMENDATION

fatigued. *See Doddrill*, 12 F.3d at 918-19 (finding lay testimony valuable because it is predicated upon personal observations of claimant). The ALJ's reasoning therefore should not be affirmed on this point.

### c.    Timeline

Finally, the ALJ rejected Ms. Villalobos's testimony because she did not correlate her observations to specific points in time. The ALJ stated:

> Further, as she did not testify the third party reports are limiting in that she has not provided a timeline on the frequency or duration of the memory problems or depression symptoms, nor has she provided a timeline to compare the claimant's symptoms with the time he had actually been taking the hepatitis C medication.

Tr. 23.

This analysis is flawed for two reasons. First, no authority permits the ALJ to reject a lay witness's written submissions to the Commissioner simply because the witness did not appear at the claimant's hearing. This reasoning therefore should not be affirmed.

Second, Ms. Villalobos's submissions to the record are clearly dated. Tr. 110, 153. Ms. Villalobos submitted her statements to the record on September 14, 2003 (Tr. 110) and April 25, 2004. Tr. 153. The ALJ thus could have determined the date of Ms. Villalobos's observations from the record. Furthermore, Ms. Villalobos directly answered the Commissioner's questions and the Commissioner did not ask Ms. Villalobos to provide a "timeline" regarding her testimony and Villalobos's symptoms. Thus, the ALJ's rejection of Ms. Villalobos's testimony for this reason inappropriately chastises Ms. Villalobos for providing information as requested. This reasoning should not be sustained.

### D.    Conclusion: Lay Testimony

The ALJ inappropriately rejected Ms. Villalobos's testimony. The reviewing court may find an ALJ's rejection of lay testimony harmless where it "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056. This is not presently the case. Therefore, the ALJ's findings and conclusions regarding Ms. Villalobos's testimony should not be affirmed.

## V.    The ALJ's Step Five Findings

Finally, Villobos asserts that the ALJ made erroneous findings at step five in the sequential proceedings. Pl.'s Opening Br. 19.

After an ALJ determines that a claimant cannot perform past relevant work at step four, the ALJ must determine if the claimant can perform work in the national economy at step five. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant has non-exertional limitations, including environmental limitations, the ALJ must draw upon the testimony of a vocational expert to support his step five findings. *Id.* at 1102. The ALJ's questions to the vocational expert must include all properly supported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). Because the ALJ failed to properly consider the evidence discussed above in his RFC assessment, this court cannot affirm the ALJ's step five findings.

## REMAND

The ALJ erroneously evaluated Villalobos's testimony, Dr. Strek's opinion, and the lay witness testimony. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000.), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be

served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1178 (quoting *Smolen*, 80 F.3d at 1292). The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 348)).

Here, the ALJ failed to properly evaluate Villalobos's testimony, Dr. Strek's opinion, and the lay testimony. The ALJ's subsequent RFC assessment is therefore not based upon the proper legal standards. Villalobos's counsel elicited testimony from the vocational expert regarding additional limitations pertaining to Villalobos's use of his hands and an alleged need to lay down during the workday. Tr . 1161-63. However, Villalobos does not presently cite or develop these additional limitations. Villobos instead asks the court to credit Dr. Strek's opinion regarding his alleged inability to work on August 13, 2003. Pl.'s Opening Br. 20. The germination of this opinion is unclear, as discussed above. *Supra*, 17. Further, this note does not indicate the period during which Dr. Strek allegedly believed Villalobos was disabled. For these reasons, this court declines to credit this evidence.

24 - FINDINGS AND RECOMMENDATION

Villalobos also asks the court to credit his own testimony and that of his wife regarding his alleged inability to get along with others, his temper, and his mood swings. Pl.'s Opening Br. 20. However, Villalobos fails to establish the manner in which these characteristics preclude performance of work activity. The court therefore declines to credit this evidence.

Additionally, the record shows that Villalobos abused substances for much of the period in question. Because Villalobos's drug use occurred during the period during which he now claims disability, if, upon remand, the ALJ reaches a finding that Villalobos is disabled, he must then properly evaluate his findings pursuant to 20 C.F.R. §§ 404.1535; 416.935.

In such instances, award of benefits is inappropriate. *Harman*, 211 F.3d at 1180. The matter must be remanded for further proceedings addressing the improperly evaluated evidence discussed above. *Id.* If necessary, the ALJ must then revise his RFC analysis and apply the correct medical-vocational guideline or obtain vocational expert testimony regarding Villalobos's workplace limitations. Finally, the ALJ must make adequate step four and five findings incorporating any revised findings.

## **RECOMMENDATION**

For these reasons, this court should REVERSE the Commissioner's final decision and REMAND this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. *Objections to this*

*Report and Recommendation, if any, are due by December 13, 2010.  If objections are filed, any response to the objections are due by December 30, 2010,* see *Federal Rules of Civil Procedure 72 and 6.*

      Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

      DATED this ___ day of November, 2010.

                                      Mark D. Clarke
                                      United States Magistrate Judge